2-24-0294 to apprehend Daka, a plaintiff's appellant, to be the director of Illinois Department of Employment Security, the IDS Board of Review, filled with Illinois Motor Corporation and GDI Services. Arguing on behalf of the appellant, Mr. Philip J. Gopal. Arguing on behalf of the appellee, Mr. David Newman. All right, Counsel, you may begin. As soon as you're ready, please feel free to adjust the microphone if needed. Thank you, Your Honors. If it may please the Court and Counsel, Section 900 of the Illinois Unemployment Insurance Act was amended in 2022 or 23. And the purpose of that amendment, Section 900 talks about recoupment of overpaid benefits. And as we all know, when the COVID-19 pandemic struck in March of 2020, when the state shut down most businesses, the Illinois Department of Employment Security was inundated with applications for unemployment. And as part of that inundation, a lot of benefits were approved that should not have been approved. And this was one of those cases that should not have been approved in the first place. And as a result, as it comes up on a year after all this happened, the IDS started sending out notices to hundreds, even thousands of applicants saying that, well, wait, we messed up, you need to pay us all back. And that proved to be a substantial injustice. And so the legislature recognized that and enacted the amendments to Section 900, providing that if a person received benefits after losing their job due to the pandemic, and it was not due to fault, and the cause and return of those benefits would cause substantial hardship, then the IDS should waive the recoupment of those benefits. And that's what happened to Mr. Dhaka in this case. Mr. Dhaka lost his job. How is it not his fault? It's not his fault because IDS approved his original application. He filed his application, and he was asked, it was an online application, and he testified to all this at the referees' hearing, that it asked, are you employed by another employer? And he said, yes. And it asked, who is employing you? Or who is employing you? And he said, Dover Meal Mortgage. And it asked, how much are you making from Dover Meal Mortgage? And he disclosed those wages, too. Is it full-time or is it part-time? And he said, yes, it's full-time. Inexplicably, I mean, you should have been stopped right there and said, well, sorry, under Section 239, you're not eligible, you can't get benefits. Sorry about that. It didn't do that. It didn't stop him while he was doing his application. And when IDS reviewed the application, it didn't stop him then either. Instead, it approved his benefits. And he started getting unemployment benefits. So then starts the time, and, of course, you're supposed to certify every couple weeks, just like as the law says. And the thing is, he did what he was told. When he lost his job, his employer told him, go file unemployment. When he was asked, are you working for somebody else? He obeyed. He said, yes, I did that. I am working for somebody else. He got approved anyway. So then when it comes to the time for certifications, he was already approved. He should not have even gotten these certifications because he should have been denied in the first place. And so in a claimant's mind, as opposed to the minds of the people who are trained in unemployment law, in his mind, he's been approved. And his employment with Dover Meal doesn't matter. Notably, that certification did not ask, are you still working for Dover Meal? It didn't ask that. Well, that's the question. Are you employed? Are you working? How could that question be more clear? It would be clear if it was an ordinary applicant who lost his job and was not working at all. Then it would be a perfectly clear question. I'm sorry, I don't appreciate your answer. I don't understand what you're trying to say. The reason is, it may appear to be clear, but it's not as clear to somebody like Ibrahim who had lost his job. He was working two full-time jobs. He lost one of them. And he disclosed his employment. No other certification does it ask him to re-disclose his Dover Meal employment. It just asks him. What was the question on the original form? I don't know because it's not in the record. Wouldn't that be your burden to bring that forward? No, it's not. It's the State's burden on administrative review because the State has to file that record. So your client never kept a copy. But my question is, what's the difference between asking are you employed on the original form and are you employed on the second form? How can I conclude that there was such confusion that I should excuse his failure to answer the question honestly? Well, a couple reasons. Okay. First, the certification didn't ask him if he's still working for Dover Meal. It didn't ask him that. It simply asked him, did you work? That's all. That's all it said. How was the answer to that known? And it doesn't ask for income as well. Didn't it also say that he had none? I think it does ask for wages, but it might only ask that. It might only trigger that on the online form if he actually answered yes. I'm not positive about that. But the problem is he was approved even though he had already disclosed. Nothing in there said he has to redisclose what had previously happened. It doesn't say you don't. It doesn't say you don't, but it doesn't say you do either. And — Well, I guess, counsel, how would you phrase the question on the certification form to make it more clear than are you employed? I would probably phrase it, are you working for anybody at all? Because then that would make it clear that any employment, not just the job, not just something to replace the job he lost would have been — was being asked for. But because he was approved, the thing is, if he — if what should have happened had happened, he would have never received the certification in the first place. So in the mind of this claimant, it was not a question of did you work at all? It's a question of did you find something to replace the job you lost? And that's not — it's not an unreasonable conclusion for someone who's not trained in this field to reach. He needed those two jobs. He's working two full-time jobs just to make ends meet, support his disabled wife and his teenage daughter. This is not a guy who's trying to game the system. When it finally came to light, when IDS finally recognized, oh, wait, this guy's still working. We need to ask him about that. And that — but that was a year later, almost a year later. And when it finally came to that point and it asked Annette in the questionnaire, he answered truthfully, yes, I have still been working for Donovanville. So it's not like this guy's trying to hide anything. He was — he was simply answering the questions to the best of his ability. And the key phrase in this — in both the state's argument and in the regulations is knowingly. Knowledge and intent, those are essential elements of fraud. Knowingly is a mental state where a person is aware of the falsity of their actions or statements. Can I ask you a question? Sure. And I don't mean to interrupt. But what's the relationship between the pre-COVID era regs? I mean, I know they're still in existence. And then the COVID era rule, which uses the phrase without fault, or the waiver of recoupment, I guess, is —  There really isn't that much of a difference between the two because the previous one did mention — the previous — the general regulations, the non-COVID ones, do mention that the benefits are to be received without fault. And there were existing regulations that defined what fault was. And those regulations are at issue in this case. And both of them say — both pre-COVID and the current COVID — say that you have to knowingly make a misstatement. Or you have to knowingly conceal a fact. He didn't knowingly conceal a fact. And I would add, in order to receive benefits. In order to receive the benefits. So he didn't knowingly conceal a fact. He disclosed a fact. He disclosed Dovamil as an original application. None of that is in dispute. And as for — and — As for the other fact, the knowingly — let me find that. Let me find this. Let me find the regulation. And one last thing. Yes. When you get to it, the guidance — the guidance scenarios, there's — Yes. There's the one that seems fairly close to the situation. Yeah. I can address that now because that's — because that touches on this knowingly part. The example — the example three, which the state relies heavily on, that's substantially different from this case. And if you look at example three, nowhere in there does it say that the person ever disclosed the employment as a full-time teacher. It simply said the claim is a full-time teacher, works part-time at a gym, claims continue to pay the full teaching salary during the pandemic, laid off by the gym, names the gym as the last employer. Nowhere in this example did that claimant disclose the fact that the person was still working as a teacher. Is that guidance related to this waiver of recoupment, COVID-era waiver of recoupment rule?  Yes, it is. It's part of it. I mean, I might suggest that perhaps the guidance assumes, because if it's explaining the waiver of recoupment, it's clear he got benefits. Well, not necessarily, because there are people — there are people, and I think this is what the regulation is trying to catch, it's trying to catch people who are truly gaming the system, who claim that they worked for somebody when they never did at all, or claim that they were laid off when, in fact, they were not. So that's not what this case is. This case, if the person failed to disclose, in Example 3, if he failed to disclose the teaching job, then IDS doesn't have any basis for believing that the person is truly not unemployed. But in Mr. Dhaka's case, that's not true, because he did disclose the overmeal, and so IDS did have a reason to believe that he was not eligible, which is what should have happened in the first place. So to answer your question, this case is distinguished from Example 3, because there, the other employment was never disclosed, whereas here it was. And I don't think it's unreasonable for a person who previously disclosing did not think he had to re-disclose it, especially when the form doesn't ask him to do so. He did not willfully withhold the material fact. He disclosed it. He did not knowingly make a false statement. He didn't. He didn't. He truthfully answered what he thought the question was answering, or he disclosed overmeal. He didn't think he needed to disclose it again. I mean, that's what certification is all about. It's not a new application. It's a, it asks, it asks the claimant if his circumstances have changed. His circumstances did not change. He was still unemployed. Well, isn't the question, did you work? I mean, isn't that what he recertified each time, and he said no? That is what he recertified each time. I mean, that's true. And it's concerning that period of time. So, I mean, each of these is a new certification, regardless of what he had said the first time. It is, but it's a continuation of the original application. The original application, he disclosed it. And everything about that recertification asks that the situation has changed. And that one question is no different. It may be phrased in a way that appears clear, but under his circumstances, they were not clear. Because under his circumstances, he should have been denied, and he wasn't. So a reasonable person would think, okay, that employment doesn't matter anymore. I may still be employed, but I'm still entitled to benefits, and so I don't have to re-say it anymore. Or maybe it means I got away with it, and I'm not going to raise it again. I'm not going to raise the specter of being denied because, hey, I snuck in the first time. They missed it. I'm not going to remind them that I am actually employed. Well, there's no evidence in the record that says that. If anything, it's the opposite. When IDS did ask, finally, are you employed by Dovamil? He said yes. He admitted it. He didn't try to get himself out of it. He admitted it. He's not seeking benefits that recruit after that time. He just wants the return of the previous. Who is the burden on fault versus without fault? The statute doesn't really say. But it does say that if fault is an agency error, if the overpayment is a result of an agency error, then it's presumed to be without fault. Actually, if it's a result of a reconsidered finding or determination that there was fraud, then it's conclusive. So, I mean, the Santa review is clearly erroneous. And I believe under these circumstances, Mr. Dacca believed he was doing the right thing. And whenever called upon on a clear question, he answered it truthfully. And therefore, I believe the Board of Review was clearly erroneous in denying the waiver. I can touch briefly on the supplemental record. Okay. I ask you just one question. Yeah. You said that the certifications, the biweekly certifications, are a continuation of the first application. It's a continuation, but it's not a new application. It serves a different purpose. Where do you, in the statute, do you get that from? I don't. It's just kind of my colloquial way of discussing it. Okay. But it's clear that it's not a new application. I missed that. Point that out. What's clear is that it's not the same as applying for benefits for the first time. Okay. Every question in the certifications, and you can see those in the record, it's about whether your circumstances have changed. And for Mr. Dacca, his circumstances have not changed. I would add that the circuit court below and the IDS below and the referee, they all relied heavily on the April 22nd, 2022 decision of the referee that says he was not an unemployed individual. They seemed to think, well, he didn't appeal, so he's done. Well, the recruitment's waiver statute presupposes that the person is ineligible in the first place. Otherwise, they wouldn't have to be doing this. And nothing in that opinion, nothing in that decision by the referee said anything about fraud or misstatement or false statement or just failing to disclose. It didn't say any of that. If anything, it said the opposite. It simply said he's an unemployed individual. He thought he was answering a different question. And, by the way, down below, you guys should look at his existing waiver application. So the EOJ in that case was not deciding anything about fraud. And that did not come up until this case was initiated. And so, therefore, it's not binding on our client if the State is trying to argue that. It simply found him ineligible. It didn't do anything else. If anything, it found the opposite, that he was just doing what he thought he was supposed to be doing. So, therefore, we ask that the decision be reversed. All right. Thank you, Counsel. You will have time to move on. Thank you, Your Honor. Counsel, you may proceed. Thank you. May it please the Court and Counsel, I'm Assistant Attorney General Dave Neumeister on behalf of the State Appellees. It's not every day that we get a statute or a regulation that gives you a concrete example of how it's to be applied and interpreted. But that's what we have here with Example 3 that we've been talking about. It tells us just what it means to be not without fault. And the example is a claimant with two jobs knowingly decides not to disclose one of them when certifying for benefits. Because of a mistaken belief that his claim only pertains to the employer from which he or she was separated. And out of the regulation itself, it says even if the belief is erroneous, the claimant who does that is still not without fault for purposes of the recoupment waiver. It tells us how to handle this. Counsel's argument that nothing in Example 3 would indicate that there had been a disclosure of primary employment in the original disclosure. I mean, what about that argument? That argument assumes, if I'm understanding it correctly, Your Honor, that the example only applies to an initial application, if I'm understanding it correctly. But that's not true. It applies to every single certification along the way from the initial application through the conclusion of the matter. And it needs to be that way, Your Honor, because each certification has to be viewed as an entity unto itself. Because that's the whole reason for the need to recertify, because circumstances can change from time to time during the periods of recertification, which I believe is just every two weeks, which is why a claimant must recertify every two weeks, because perhaps they've gained other employment or their circumstances have otherwise changed. So the initial information that's given in this case that Mr. Dacca was employed by Dover, the department has that in the initial application, but it has no, let's just say, ongoing impact or preclusive effect going forward because he has to tell the department every two weeks, hey, this is my situation now. Two weeks later, this is my situation now. And on it goes. Go ahead. Well, I have two questions. One, did the claimant get benefits from March 8, 20, or did he get until April 4, let's say, 20? Did he get any benefits? Are you talking about the window, Your Honor, where my opponent argues that he should at least be entitled to that? No, because that, I understood your, I have clarity on your argument or your counterargument that at the point when he filled out that form, which it's looking back, and I think it would have covered that period, I forget what the end date is, but starting 4, 5, 20 to, I think it's 4, 21. He certified, you know, your argument is he certified in arrear, so looking back that he wasn't working during this period of recertification. But I guess what I'm asking you is he lost his job 3, 8, I think, or applied perhaps 3, 8. Did he get any benefits at all? If he did, I have to say I'm not 100% certain. And I don't want to, yeah, correct. And I don't want to make a misrepresentation. The other thing I'd point out is example 3, and rereading it, as counsel said, there's nothing to indicate that the claimant in example 3 didn't tell the truth, if you will, on the initial application. The example 3 mentions the claimant certifies for benefits each week but does not report the school wages. And then it goes on to say this is not without fault because while certifying for benefits, the claimant made a material misrepresentation. I don't say that to solve the issue. I say it because it appears to me it's sort of perfectly ambiguous on the point of, or perhaps there's something to be argued from each side. Certainly mentions while certifying each week, the claimant in 3 doesn't mention the full-time job, which is the case here. Right, Your Honor. But if we get to the point where he's certifying each week, I think we can safely assume that his initial application was approved. Because if he has to keep recertifying, then it's already been established that he is getting benefits. If he needs to keep recertifying in the example, which is, I hate the term exactly, I won't use exactly but very close to what we have here. If the claimant in example 3 does what Mr. Dacca did here, even though he had a mistaken belief that his claim was only against the employer from whom he was discharged, if he doesn't disclose income from another employer, that's not without fault. And his state of mind doesn't matter. That's why the discussions of fraud or any other sort of claim that would have a state of mind requirement really aren't relevant here, because the code and the regulations don't take his state of mind into account. That's the whole key of the word erroneous belief within example 3. So I appreciate why my opponent argues some necessity to prove a state of mind, but the code doesn't require it. In the examples that the ALJ cited in the ruling, and that's on pages 2, 10, 11 of the record, he returned to work but kept collecting benefits. He worked another job but didn't report those earnings. And there was no reference to his state of mind when doing so. So just the act of reporting the wrong information and knowing you did it qualifies as not without fault. And even though it's not that... What about the initial application? He disclosed the employment by dollar bill. Yes, he did. So it was that agency error to have approved the initial application. That's correct. All right. And so for the first period, the first payment period, that's not being sought as recoupment then? That's what I understand, yes. And then it's upon that first recertification that fails to disclose dollar bill. It's at that point that the recoupment begins. Yes, it's that point that the recoupment begins. Yeah. All right. So that's when the fault comes in as the claimants, not the agencies. Yes. All right. And that's whose fault we're assessing in the recoupment proceedings. So even though I just mentioned the ALJ's decision, even though it's not that decision that's under review, the board did adopt that decision and adopted and used that very reasoning. And figuring out where to go next.  If the scenario that my opponent is proposing was true, let's just think about the impact of that, if we could. A claimant would effectively be able to knowingly provide incorrect information in certification and get a waiver just by later asking for the waiver, then getting a hearing and saying, oh, I was confused or I was mistaken or whatever it might be, and I didn't mean to do it. And that interpretation, and on the flip side, if he had continued to disclose Dove and Mule and continued to get paid, that would be a continuing agency error, not subject to recoupment. Is that correct? If on the recertification, he would have disclosed the disclosure. Yes, then we're talking about a different situation. Okay. But the situation we have here, if the mere explanation that he gave to the ALJ was acceptable, then that interpretation would basically let a claimant circumvent the recoupment process. And if we get back to the question that he was answering, the department's not in a position to craft, they have so many different claims, they're not in a position to craft the question, and you initially referred to it, Justice Jorgensen, about yes or no. Are you working yes or no? The department's not in a position to craft a specific question to address every likely situation that you have in an employment scenario. That's why it tries to be short and straightforward and to the point and economical with the questions that it asked. And, again, he doesn't appear to dispute that if he had said yes in the initial applications, he wouldn't have been eligible for benefits. So by whatever interpretation, and especially if we refer to example three, he is knowingly providing false information and he's told the ALJ, yes, I knew. He explained to the ALJ. He was candid. But the fact that he knew he was reporting or he knew he was still working for Dover Mill but didn't put it down, he explained that and he admitted to it. So it's also important to note, I think, that any recoupment that he would be liable to pay would not necessarily have to be in a lump sum. It could come from any number of ways, deduction of future benefits or reaching some sort of an agreement with the department. And the department's also charged with being a good steward of taxpayer dollars here. So that's what the recoupment is set up for, and any recoupment money that the department gets goes back into repayment of funds, not to some administrative expense. That's not in the record, but it is a fact. So, again, the board got this right when they ruled on Mr. Dacca's claim and found that his state of mind, among other things, his state of mind was not relevant in deciding whether he was not without fault. If he's not without fault, he doesn't get the benefits. He testified to those facts, and that is not against the manifest way to the evidence. And when you apply that testimony to the code sections, and especially Example 3, that makes him not without fault. The board's determination that he was not entitled to the waiver was not clearly erroneous, and it's entitled to deference, and it's certainly not clear that the board was mistaken. This decision should be affirmed. If you have no other questions, then I'm prepared to stand on my brief as to the rest and thank Your Honors for your time and attention. All right. Thank you, Counsel. Counsel, you may commence rebuttal. Thank you, Your Honors. With regard to Example 3, which the state, again, heavily relied upon, counsel emphasized a mistaken belief, and those words are used in the Example 3. Well, this was not just a mistaken belief. Mr. Dacca had a ruling from IDS that he was entitled to benefits despite having his job at Dovahmeal. So this isn't just like, well, I think it's okay, some vague type of thing. He actually has a ruling in his favor, and I think he's entitled to rely on that in some way. So it's more than just I didn't think I had to. What he's really saying is I have a ruling that says that this is okay. Counsel, that kind of sounds like an equitable estoppel sort of argument. It does sound like equitable estoppel. Do you have any case law? I didn't see any direct case law applying equitable estoppel in this context. I did mention it in my briefing, and I can re-refer you back to equitable estoppel. Where was it? Sorry, on page 35 of my brief. Courts will apply equitable estoppel against the public body if the aggrieved party can show that the entity affirmatively acted, the affirmative act induced substantial reliance, and the aggrieved party substantially changed its position as a result of its justifiable reliance. So here we, this isn't just a rogue person in a municipality that says, yeah, I think you can get a permit to do this. This is an actual decision by IDS saying that based on the application you submitted where you disclosed Dovahmeal's, you're employing with Dovahmeal, you're entitled to benefits. Right. I mean, this is not, you know, unemployment benefits case here. But, I mean, any equitable estoppel requires a change of position. Well, the change of position is the way he acted in response to the certification. But what did he do differently? Did he stop seeking employment because he was getting benefits? No. No, that's not, no, because you're not allowed to stop seeking employment because you're on benefits. So there's no question that he wasn't trying to find a new job during that time. Right, but what is the change in position there? The change in position is acting in accordance with what IDS was asking him to do with regard to subsequent certifications and accepting the benefits that were given to him. I'm not suggesting that equitable estoppel strictly applies here, but the recoupment statute is related to equitable estoppel because the state recognized that IDS sometimes makes mistakes in its applications and it's unjust to require claimants to bring them back, to pay them back under the right circumstances. That itself sounds a lot like equitable estoppel. Now, it's done in the statutory and regulatory context, but a lot of the same principles are equally equitable here. Counsel, I mean, the mistake of the agency would have been rectified if at the first certification he said, I am working, here are my wages. Well, not necessarily because he said I am working at the outset and they didn't, it wasn't on then. No, no, no. If he had said, I am working, here are my wages on that first certification, the mistake is rectified. Or, as Counsel candidly admitted, if he continued to say that and they continued to miss it, that's a different scenario. That would be a different scenario, but that doesn't mean that he acted knowingly in answering the questions the way he did. Counsel mentioned if the scenario that we're arguing is true, then somebody can knowingly provide false information and then say he was confused. Well, no, because knowingly is still an element of the case. And so what we're arguing is that whatever he put on the certifications that was incorrect, he did not do it knowingly. And that's why the Board's decision was incorrect. And the other thing, because the certifications going down the line after he was originally approved, you were asking if, like, what else could they possibly ask, and I provided you the answer with wording a little bit better. But also, like, in an overall perspective, the certification could say, your certification is reapplying for unemployment benefits just like your original application did and make that clear to these people who are not trained in the law so that they understand. The whole purpose of the system is supposed to not have to involve lawyers unless it's really necessary. If the certification clearly said this is just like a new application, then that might have made it more clear to Mr. Dacca that you need to disclose dopamine even though he already did so. Thank you very much. We will take the matter under advisement and issue a ruling in due course. I will recess until 1 o'clock.